FILED

√6

AUG – 4 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 05-17886-B-7
)
Dean Clifton Marshall, Jr., ) DC No. SJS-1
)
)
Debtor. )
_____ )

**MEMORANDUM DECISION REGARDING CREDITOR'S APPLICATION
FOR ALLOWANCE OF ADMINISTRATIVE CLAIM AND
OBJECTION TO TRUSTEE'S FINAL REPORT**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Susan J. Salehi, Esq., appeared on behalf of creditor/applicant, Teresa Marshall.

T. Scott Belden, Esq., appeared on behalf of the chapter 7 trustee, Randell Parker.

Before the court is a motion by Teresa Marshall ("Teresa") seeking the allowance of an administrative claim (the "Motion"). Teresa's motion is the basis for her objection to the chapter 7 trustee's final report. Teresa incurred legal fees in the successful prosecution of an adversary proceeding against her former husband, the debtor Dean Clifton Marshall (the "Debtor"). The legal services were provided by Susan J. Salehi, Esq. ("Salehi"). As a direct result of the adversary proceeding (No. 06-1101: the "Adversary Proceeding"), the Debtor was denied a general discharge under § 727(a)(4)(A).[1] As an indirect result of the Adversary Proceeding,

_____

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *before* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

1    the chapter 7 trustee, Randall Parker (the "Trustee") recovered a nominal amount of

2    money for the unsecured creditors.  Teresa now contends that her prosecution of the

3    Adversary Proceeding substantially benefitted the estate and she seeks to have her

4    legal fees treated as an administrative expense pursuant to § 503(b)(4).  The Trustee

5    opposes the Motion on various grounds, including Teresa's failure to obtain prior

6    court approval to prosecute the Adversary Proceeding for the benefit of the estate.

7    For the reasons set forth below, the Motion will be denied and the final report will

8    be approved.

9        This memorandum decision contains the court's findings of fact and

10    conclusions of law required by Federal Rule of Civil Procedure 52 (made applicable

11    to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052).  The

12    court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and §§ 523 and

13    727 and General Orders 182 and 330 of the U.S. District Court for the Eastern

14    District of California.  This is a core proceeding pursuant to 28 U.S.C.

15    § 157(b)(2)(A).

16    **BACKGROUND AND FINDINGS OF FACT.**

17        The specific facts and conclusions of law relating to the Adversary

18    Proceeding were stated in a Memorandum Decision filed in the Adversary

19    Proceeding on February 1, 2008, and need not be fully repeated here.  The essential

20    facts relevant to the issue at hand are as follows:  Teresa is the Debtor's former

21    spouse and a creditor of the bankruptcy estate following dissolution of their

22    marriage in the state court.  Through a settlement agreement negotiated in the

23    dissolution action, the Debtor was allowed to keep numerous family assets,

24    including a valuable gun collection and a substantial pension.  In return, the Debtor

25    agreed to pay various community debts totaling approximately $36,000.  Soon after

26    conclusion of the dissolution action, the Debtor filed this chapter 7 bankruptcy

27    petition and sought a discharge of those community debts.  As a result of the

28    settlement in the dissolution action, Teresa had a claim against the Debtor.  Teresa

2

timely filed the Adversary Proceeding to (1) determine dischargeability of her claim

against the Debtor, and (2) object to the Debtor's general discharge.[2]

Teresa alleged in the Adversary Proceeding, *inter alia*, that the Debtor

concealed many of the assets retained in the dissolution action and made a false oath

in his schedules. After a trial in the Adversary Proceeding, the court found that the

Debtor did knowingly and fraudulently conceal material non-exempt assets and

therefore made a false oath connected with the case. Teresa's request for additional

relief under § 523(a)(2)(A) was denied.[3] Judgment was entered against the Debtor

denying his discharge on February 1, 2008, and the Adversary Proceeding was

closed a few days later. On March 3, 2008, Teresa filed a one-page proof of claim

for an *unsecured* debt in the amount of $10,200 for "attorney fees due to bankruptcy

fraud filing."

Teresa contends that she provided the Trustee with information regarding the

undisclosed assets at the § 341 meeting of creditors. However, the Trustee failed to

pursue the assets and filed a "no asset" report.[4] After the court found that the

Debtor had omitted significant non-exempt assets from his schedules, the Trustee

filed a "notice of assets" and a motion to compel the Debtor to turn those assets over

to the estate. Eventually, the Trustee, through his attorney, negotiated a compromise

with the Debtor which was subsequently approved by the court. Based on the

compromise, the Debtor paid the sum of $20,000 to the estate.[5]

---

[2]For some reason, Teresa sought relief under § 523(a)(2)(A) (fraud in the negotiation of the marital settlement agreement) and 727(a)(4) (failure to disclose the family assets retained in the dissolution action). She did not seek relief under § 523(a)(15) which applies directly to obligations incurred pursuant to a court order in a marital dissolution action.

[3]The fraud claim was denied because Teresa failed to prove that she had been damaged by the alleged fraud.

[4]Teresa did not object to the "no asset" report.

[5]Teresa did not object to the proposed compromise and it was approved on June 12, 2008.

3

1    On April 1, 2009, the Trustee filed a Final Report and Proposed Distribution.

2    After payment of administrative expenses, the Trustee will pay $8,861.89 to

3    unsecured creditors, including Teresa on the basis of her proof of claim; a 17.17%

4    distribution.  Teresa objected to the Final Report, contending that her attorney's fees

5    should be treated as an administrative expense.  On April 14, 2009, Teresa amended

6    her proof of claim to change the status to "priority" based on § 507(a)(2):

7    "administrative expenses allowed under section 503(b) of this title, and any fees and

8    charges assessed against the estate under chapter 123 of title 28."  The single-page

9    document contained no other changes and no supporting documentation.  On May

10   21, 2009, Teresa brought this Motion requesting that her proof of claim for

11   attorney's fees be allowed and given administrative priority pursuant to § 507(a)(2).

12   If Teresa's claim for $10,200 is allowed administrative priority, the estate will

13   become administratively insolvent; the existing administrative claims will receive

14   less than full payment and the unsecured creditors will receive nothing.

15   **ISSUE PRESENTED.**

16       This court must decide if there is any basis upon which Teresa's claim for

17   attorney's fees can, and should, be given priority as an administrative expense.  The

18   gravamen of Teresa's argument is that, but for her efforts in prosecuting the

19   Adversary Proceeding, the bankruptcy estate would have recovered nothing.  Teresa

20   provided information to the Trustee to show that the Debtor had failed to disclose

21   material assets; the Trustee filed a report of no assets; Teresa then filed the

22   Adversary Proceeding and established that the Debtor had concealed property of the

23   estate; and based thereon, the Trustee recovered money from the Debtor for the

24   benefit of the estate.

25       The Trustee objects to the Motion on several grounds, including timeliness,

26   reasonableness of the attorney's fees, and failure to seek court approval prior to

27   prosecuting the Adversary Proceeding.  It is uncontroverted that Teresa did not

28   obtain prior court approval to pursue the Adversary Proceeding and she has offered

4

1   no explanation for the failure to do so.

2   **ANALYSIS AND CONCLUSIONS OF LAW.**

3          Under appropriate circumstances, the legal fees and expenses incurred by a

4   creditor to recover assets for the bankruptcy estate may be treated as administrative

5   expenses pursuant to § 503(b)(3)(B) and § 503(b)(4).  An administrative expense

6   allowed under § 503(b) is entitled to priority distribution pursuant to § 507(a)(2).

7   Teresa bears the burden of proving her entitlement to an administrative expense.

8   *Tex. Compt. of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores,*

9   *Inc.),* 163 F.3d 1063, 1071 (9th Cir. 1998).

10         **Sections 503(b)(3)(B) and 503(b)(4).**

11         Section 503(b)(3)(B) provides for the administrative treatment of expenses

12  incurred by a creditor, *other than attorney's fees*.  It states in pertinent part:

13              After notice and a hearing, there shall be allowed,
                administrative expenses . . . including . . . . the actual,
14              necessary expenses, *other than compensation and*
                *reimbursement [of attorney's fees] specified in*
15              *paragraph (4)* of this subsection, incurred by – a
                creditor that recovers, *after the court's approval*, for the
16              benefit of the estate any property transferred or
                concealed by the debtor.  (Emphasis added).
17
    Teresa's claim fails to qualify for treatment under § 503(b)(3)(B) for two reasons.
18
    First, her proof of claim does not itemize any expenses whatsoever, much less
19
    expenses which the court could determine might be "actual" and "necessary."
20
    Second, Teresa did not seek court approval to incur any expenses for the benefit of
21
    the estate.[6]
22
           For Teresa's attorney's fees, the court must look to section 503(b)(4).  This
23
    section provides for administrative treatment of "reasonable compensation for
24

25   _____

26        [6]Teresa cites § 503(b)(1)(A) for the proposition that prior court approval is not required
    for an administrative claim.  Section 505(b)(1)(A) offers administrative priority for actual and
27  necessary expenses incurred to preserve an asset of the estate.  However, as the court in *In re*
    *Canton Jubilee, Inc.*, 253 B.R. 770, 779 (Bankr.E.D.Tex. 2000) stated, "it is clear that
28  § 503(b)(1)(A) cannot serve as a basis for awarding fees to professionals."

1    professional services rendered by an attorney . . . *of an entity whose expense is*

2    *allowable under [§ 503(b)(3)(B)]* . . . ." (emphasis added).  Thus, a predicate for the

3    allowance of attorney's fees under § 503(b)(4) is the creditor's eligibility for the

4    reimbursement of expenses under § 503(b)(3)(B).  A statutory predicate for

5    eligibility under § 503(b)(3)(B) is "prior court approval."  Teresa did not seek prior

6    court approval to prosecute the Adversary Proceeding for the benefit of the estate,

7    she prosecuted it for her own benefit.  By the express terms of the statute, her claim

8    cannot be allowed as an administrative expense and is not eligible for priority

9    treatment.[7]

10          Bankruptcy courts in the Ninth Circuit have strictly applied the "prior

11    approval" requirement.  The court in *In re Fall*, 93 B.R. 1003, 1013 (Bankr.D.Or.,

12    1988) described the legislative history of § 503(b)(3)(B) and noted that the

13    precursor of the section did not specifically require prior court approval.

14          When Congress passed § 503(b)(3) it followed case law
         developed under [predecessor] § 64(a)(1) which
15    recognized the necessity of establishing a mechanism to
         assure that efforts are not duplicative and costs are not
16    excessive and counterproductive.  A minority of courts
         has allowed expenses under § 503(b)(3) where prior
17    court approval has not been obtained.  *This court
         believes that because the statutory mandate of
18    §503(b)(3)(B) is clear and, more importantly, because it
         views early court control as wise, it will not allow
19    expenses under that subsection without prior court
         approval. Id.* (emphasis added).

20          In the case, *In re Cent. Idaho Forest Prods.*, 317 B.R. 150 (Bankr.D.Idaho,

21    2004), creditors applied for priority treatment of legal fees incurred in the

22    prosecution of pre-petition litigation.  Their efforts produced the only assets for the

23    

24    _____

25       [7]The court acknowledges the holding in *Law Offices of Neil Vincent Wake vs. Sedona
26    Inst. (In re Sedona Inst.)*, 220 B.R. 74 (9th Cir. BAP 1998), however the issue on appeal was
      specifically limited to the question of whether eligible expenses were a prerequisite to an award
27    of attorney's fees.  *Id* at 76-7.  The court addressed § 503(b)(4) eligibility in terms of having
      compensable expenses under § 503(b)(3), and did not address the § 503(b)(3)(B) eligibility
28    requirement of prior approval.

1    bankruptcy estate.  There were no objections to the motion and the trustee supported
2    the request based on the applicant's "significant contribution to the estate." *Id.* at
3    153.  The court acknowledged the applicant's contribution.  However, the court
4    countered, "But the fact that a benefit was conferred on or received by the estate
5    does not alone or automatically justify allowance of an administrative expense.  The
6    request must instead be evaluated and determined under the applicable provisions of
7    the Bankruptcy Code." *Id.* at 154.  Notwithstanding the lack of any objection to the
8    application, the court refused to take the "easy route." *Id.* at 154.  The court was
9    compelled to deny the application for the lack of prior court approval as required by
10   § 503I(b)(3)(B). *Id.* at 159.

11          Here, even if Teresa had obtained prior approval to prosecute the Adversary
12   Proceeding, the court would not be able to grant the relief requested in the Motion.
13   Teresa had the burden to prove that "any expenses were actually incurred and
14   necessary and any fees are reasonable." *In re Fall*, 93 B.R. at 1012.  Teresa failed
15   to sustain that burden of proof.  Teresa offered no records for the court's
16   consideration. The single-page proof of claim was devoid of any documentation and
17   Teresa submitted no breakdown of her costs or legal fees.  Unlike the creditors in
18   *Cent. Idaho Forest Prods.*, Teresa did not directly recover any assets for the estate;
19   she simply established their existence and laid a foundation for the Trustee to
20   demand their turnover.  The services rendered by Salehi during the course of the
21   Adversary Proceeding necessarily involved far more than the identification and
22   location of undisclosed assets, the services for which the estate arguably benefitted.
23   The Adversary Proceeding involved numerous factual and legal issues relevant to
24   the Debtor's right to a discharge.  It would be illogical for the court to assume,
25   without any supporting documentation, that all of Salehi's attorney's fees were
26   actually, reasonably, or necessarily, expended in the location and recovery of assets
27   for the benefit of the estate.
28   / / /

7

1

2          **"Extraordinary Circumstances" Standard for Retroactive Approval.**

3          Notwithstanding the statutory requirement for "prior approval," as addressed

4    above, some courts have recognized that it may be appropriate to give court

5    approval retroactively when a creditor produces a substantial benefit for the

6    bankruptcy estate without seeking prior approval. *See Xifaras v. Morad (In re*

7    *Morad)*, 328 B.R. 264, 271 (1st. Cir. BAP 2005) (applying the test for "retroactive"

8    employment of professionals under § 327(a)). In the Ninth Circuit, *nunc pro tunc*

9    employment of a professional may be approved upon a showing of "[E]xceptional

10   circumstances where an applicant can show both a satisfactory explanation for the

11   failure to receive prior judicial approval and that he or she has benefited the

12   bankruptcy estate in some significant manner." *In re Atkins*, 69 F.3d 970, 975 (9th

13   Cir. 1995), quoting *Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.)*, 837 F.2d

14   389, 392 (9th Cir. 1989) (internal citations omitted).

15         Here, Teresa has not presented any explanation whatsoever for waiting until

16   the eleventh hour to present a request for administrative priority treatment of her

17   attorney's fees. If she was truly frustrated by the Trustee's failure to take action

18   against the Debtor after the meeting of creditors, she could have asked the court for

19   permission to pursue assets for the estate before she filed the Adversary Proceeding.

20   However, the point of the Adversary Proceeding was not to recover assets for the

21   estate, it was to protect Teresa from the consequences of a discharge of the Debtor's

22   obligation under the marital settlement agreement. In that regard, Teresa has

23   already received the full benefit of her efforts. In this case it was particularly

24   important to seek court approval because the amount of Teresa's claim would render

25   this estate administratively insolvent. Had the Trustee known that Teresa was going

26   to submit a substantial administrative claim, leaving the estate administratively

27   insolvent, the Trustee would have had no practical reason to pursue the turnover of

28   assets in the first place.

8

1 | **CONCLUSION.**

2        Based on the foregoing, the court finds and concludes that Teresa is not

3 statutorily eligible for administrative treatment of her attorney's fees because she

4 did not request prior approval to prosecute the Adversary Proceeding for the benefit

5 of the estate. Further, she provided no information in her claim, or in her Motion,

6 upon which the court could base a determination as to the reasonableness and

7 necessity of the fees and expenses she incurred. Finally, she has not shown

8 "extraordinary circumstances" upon which *nunc pro tunc* relief could be granted.

9 Accordingly, the Motion will be denied. The Trustee's final report will be

10 approved.

11        Dated: August _____4_____, 2009

12

13                      W. Richard Lee

14                      United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9